UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 19-20040-MMM-EIL |
| ALFRED JERRY, | |
| Defendant. | |

**Defendant's Memorandum of Law in Support of Sentencing Commentary**

Defendant Alfred Jerry, through his attorney Assistant Federal Public Defender Johanes Maliza, hereby submits this Memorandum of Law in Support of his Commentary on Sentencing.

**I.  A Sentence of 84 Months and One Day is Appropriate**

Mr. Jerry understands the gravity of what has happened in this case.  He asks the Court to consider a sentence of seven years and one day, however, in light of several statutory considerations.  First, Mr. Jerry's history and characteristics, as described in the Mitigation Report, are central to understanding the context of this case.  Second, Mr. Jerry's background is not as bad as it appears from the headline observations.  Third, other individuals in his position, before this Court and others, have received sentences significantly below their sentencing guidelines.

**A.  Mr. Jerry Committed This Act in a Moment of Panic and Desperation**

As described in his mitigation report, Mr. Jerry's journey from childhood to today has been spent in a vain hope of establishing a healthy family.  In May of 2019,

Mr. Jerry saw his last, best chance at a family slipping away. He had made promises to his family while employed, then lost his job. PSR ¶ 74. He panicked.

The panic was not merely because he would not be able to follow through on his promises. The panic was because Mr. Jerry had finally found meaning through work, *see* Ex. A, and it had become clear to him that his past would prevent him from moving forward through work. His employee of the month award acknowledged both his work ethic, and society's acceptance of him. It showed him that there *was* a life he could live. But by May 2019, he had been repeatedly lauded for his work ethic, and then fired for his past. Over and over, he would work hard and meet initial acclaim . . . then get fired because they found out about his prior convictions. Ultimately, the message was received: His past would never escape him, and he would not get accepted for his work.

This would not have been a problem for Mr. Jerry, except for the promises he had made. The promises were not merely about money. They were about making up for lost time, and creating a family that had only ever existed in his imagination. Mr. Jerry had promised his mother that he was going to support her. He had not seen her since he was a young teenager. While in IDOC, she had gone to the hospital, and after getting fired again, he feared he would not be able to build enough wealth in time to help her.

While he had no personal problem with working his way up from the bottom, it was the fear of letting his mother down that most worried him. That fear drove his decision making on May 2, 2019.

Punishment for a crime is justified not only by the conduct, but by the motive. Mr. Jerry understands his conduct was unacceptable. But the motive was not to get rich – one does not get rich by robbing a phone store. The motive was to get enough money to support his mom in the short term; and his chosen legal means of doing so (working long hours in backbreaking jobs) had been shut to him because of his past.

### B. Mr. Alfred's Background Is Important

The Mitigation Report describes Mr. Jerry's childhood in detail. It cannot be overlooked, because it provides this Court vital insight into the circumstances of this offense. As noted in the PSR, documentation of Mr. Jerry's life is difficult. Mr. Jerry remembers the experiences very clearly, but lacks the bureaucratic data points to assist the Court in verifying his memory. The court, then, is confronted with a choice: It can believe Mr. Jerry's account (based on his recollection from being a pre-Kindergartener), or it can dismiss his memories as fanciful.

This court should credit his recollection, and understand that the gaps of information, themselves, are illuminating. For instance, Mr. Jerry does not remember the names of people who cared for him between the ages of 3-7 years old. That is a window into how transient his existence was as a little child. Mr. Jerry does not know the precise spelling of his middle name – the spelling in the PSR is a guess.

In short, Mr. Jerry has grown up without some of the most basic knowledge that many in society get. It is worth asking: *Who does not know the people who took care of them from age 3-7? Who lacks the family support to tell him how to spell his middle name?* These are

3

not just issues of not "knowing himself." The lack of this information speaks to how abandoned Mr. Jerry has been through his life.

He is trying to make his life into something new, but he has no reference. He tried to work his way up, and even when he did thing the right way, he got confirmation that his past defines him. He tried to connect with his family, but only because he imagined what it might be like. He tries to reconcile his past, but the details are so hazy that he struggles to cope.

Mr. Jerry is a person with a strong work ethic, and a desire to be a contributing member of society. While he works to learn how to fit in, this Court should take his struggles into account. They are not excuses. They are vital context for what was going on in Mr. Jerry's life on May 2, 2019.

### C. Mr. Jerry's Age at the Time of His Prior Convictions Is Important

Mr. Jerry was barely an adult when he committed the two crimes that result in him being a career offender. The district court is permitted to consider Mr. Jerry's age at the time of his prior convictions. *See United States v. Brown*, 985 F.2d 478, 482 (9th Cir. 1993) (age at time of prior convictions and nature of those convictions are proper factors to consider in determining whether career offender status significantly over-represents seriousness of defendant's criminal history).

There are studies to support the idea that a teenager is not as capable of making good decisions as someone 25 or older. *See* Arain, M., et al., "Maturation of the Adolescent Brain," *Neuropsychiatric Disease and Treatment*, vol. 9 at 449-461 (2013), Ex. B. The article explains that, essentially, researchers consider 10-24 to be "adolescence" in

term of brain development.  *Id.* at 452.  One of the last regions of the brain to grow is the prefrontal cortex.  *Id.* at 453.  That region is responsible for "the capacity to exercise good judgment when presented with difficult life decisions."  *Id.*

In apparent recognition of this fact, the Sentencing Commission wisely suggested that a Court can consider age within its analysis.

> Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guideline.

U.S.S.G. § 5H1.1.

When considering Mr. Jerry's age at the time of the two predicate offenses, his youth at the time is notable.  The convictions that make him a career offender, Cook Co. No. 10-CR-0683601, and Cook Co. No. 11-CR-106920, occurred when Mr. Jerry was only 18, and 19 years old, respectively.  He could not have known the consequences then.

Again, the background of Mr. Jerry's whole life matters.  He did make mistakes, but they came in the context of his childhood.  As described in the mitigation report, Mr. Jerry was fending for himself at a young age.  So the gun possession charge at age 16 did not happen in a vacuum.  It came a couple months after the attack on his life, when he was living alone.  And while the charge "accurately" alleged that it was not "on his own land, or in his own abode, or a fixed place of business," PSR ¶ 41, it did not mention that he was in the building where he slept at that time.  He has made mistakes while trying to survive in trying circumstances.

Mr. Jerry did not spend a childhood getting protected, instructed, or cared for, in the way that most people do. He spent it fending for himself. He was in danger at home from caregivers. He was in danger in school from attackers. He has been in danger his whole life. The development he should have undergone up to age 18, and then between 19 and 27 – socially and intellectually – was spent trying to protect himself and survive.

He accepts that he is to be punished now, for this offense. But applying the career offender guideline to drastically enhance the penalties with the mistakes he made at 18 and 19 is unnecessary, and would result in a sentence that is greater than necessary to meet the sentencing goals of § 3553(a).

While the "headline" prior convictions in this case catch one's attention, it must be remembered that Mr. Jerry only has four criminal history points from conduct. PSR ¶¶ 43-44. He is in criminal history category VI because of the career offender classification, and he got two points (before application of the career offender classification) because he is on parole. It is noteworthy that Mr. Jerry's conduct, itself, has only gotten four points (as opposed to "automatic" CHC enhancements). It reflects the fact that Mr. Jerry has not been consistently problematic in his life. Rather, he made some bad decisions in his youth.

### II. Other Defendants

Mr. Jerry is not the first person with a history who has come before this court after committing a robbery. This Court has shown them mercy in the past, and Mr. Jerry is equally deserving.

In *United States v. Marcellus Ward*, C.D. Ill. No. 18-20022, Mr. Ward robbed a bank, post office, and drug store. He was in CHC V, with a murder conviction in his background. This Court sentenced him to 110 months in prison.

In *United States v. Watson*, C.D. Ill. No. 18-20054, Mr. Watson was being sentenced for his second, third, fourth, and fifth bank robberies. He had 18 criminal convictions, was in CHC VI, and got a sentence of 110 months.

In *United States v. A. Williams*, C.D. Ill. No. 18-20049, Mr. Williams was sentenced for robbing a Sprint telephone store. He was sentenced to 120 months. A co-defendant, J. Williams, received 86 months (later reduced pursuant to Rule 35).

The previous sentences of this Court demonstrate that a robbery is a massive error, but they do not require a sentence that throws the offender away for the rest of his life. Mr. Jerry has much to offer, and a sentence of 84 months plus one day will be sufficient, but not greater than necessary, to meet the sentencing goals of 18 U.S.C. § 3553(a).

### III. PSR Objections

Mr. Jerry has several objection to the initial PSR. Most were not submitted to the probation office by the objection deadline, as a result of counsel's oversight in scheduling. Mr. Jerry requests that the Court rule on the objections, though, since their tardiness was not Mr. Jerry's fault.

- **Generally**: Mr. Jerry objects to the inclusion of police reports in the PSR. Police Reports are not presumptively reliable information, since they are essentially advocacy pieces. Police reports are not presumptively accurate or reliable. *United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014). Defendants have a right to be sentenced based on reliable information. Including this information in the PSR violates his Fifth Amendment right to due process to be sentenced based upon reliable

7

information. *United States v. Johnson*, 489 F.3d 794, 797 (7th Cir. 2009) (explaining "[T]he defendant has a due process right to be sentenced on the basis of reliable information."); *United States v. Guajardo-Martinez*, 635 F.3d 1056, 1059 (7th Cir. 2011); *United States v. Drain*, 740 F.3d 426, 432 (7th Cir. 2014).

- **Paragraph 15**: Mr. Jerry objects to the description of the police finding his keys. The police reports have conflicting reports of when and where the keys were found.

- **Paragraph 25**: The probation office assessed a 2-level enhancement on grounds of physical restraint, under U.S.S.G. § 2B3.1(b)(4)(B). But the employees were never actually restrained. They were in a "safe room" that seemed locked from the outside, but was always unlocked from the inside. The two employees knew that the door was not locked.

- **Paragraph 36:** Mr. Jerry asserts that Illinois Robbery is not a crime of violence. Counsel has informed him that the Seventh Circuit decided otherwise, *see Shields v. United States*, 885 F.3d 1020, 1024 (7th Cir. 2018) (reversed on other grounds), but Mr. Jerry insists on the objection.

- **Paragraph 41**: Mr. Jerry believes there must be some error in the PSR's reference to an April 2010 sentencing on Cook Co. Case No. 09-CR-127808401. As shown in Paragraph 42, Mr. Jerry had been arrested on Cook Co. Case No. 10-CR-0683601 as of March 29, 2010, and he does not recall going to court for the former case.

- **Paragraph 47:** Mr. Jerry would like the paragraph to additionally indicate that Mr. Jerry was, at the time of the specified altercation, defending himself. The other kid hit him first. He characterizes it as a "schoolboy fight," between two kids. They were friendly acquaintances before the fight, and after the fight.

- **Paragraph 50:** Mr. Jerry denies that this occurred. He never threatened a person named Charles Brandon, and does not even know who that is.

- **Paragraph 55:** Mr. Jerry would like to note that is sister, whom he wants to testify, has always been available to corroborate his accounts.

- **Paragraph 56:** Mr. Jerry did not accept being at Lawrence Hall because he was abused while in foster care as a little boy. This is discussed in the mitigation report. He did not trust the system that had previously subjected him to maltreatment. Mr. Jerry also notes that his mother is in a nursing

- home, and that she has lymph node cancer, and that she is in a wheelchair due to an abusive relationship.

- **Paragraph 60**: Mr. Jerry does not claim membership in a gang. In Chicago, the police assign a gang to you whenever arrested, regardless of its accuracy. According to the City of Chicago Office of the Inspector General, the Chicago Police database (which is used for CPD police reports) regarding gang membership is highly inaccurate and untrustworthy: "In its response to this report, CPD agreed with OIG's findings . . . CPD acknowledged that its gang information policies, practices, and technology had impeded the Department's ability to maintain updated and relevant information." https://www.documentcloud.org/documents/5816977-OIG-CPD-Gang-Database-Review.html.

- **Paragraph 62:** Mr. Jerry would like the PSR to include that he was stabbed seven times in 2008 while in class, in front of everyone. Nobody was ever prosecuted for the stabbing.

- **Paragraph 63:** Mr. Jerry's current physical health is not good. He asked for care for his shoulder at Macon County during pendency of this case, and was denied an X ray. He was stabbed 7 times in 2008, not just "multiple times."

- **Paragraph 74:** Mr. Jerry would like it known that he was employee of the month while working at Express. He had worked so much the preceding months because he was an excellent worker. He kept getting let go, though, when people discovered his background. He also denies that he "quit" working there. He was unable to take the last job they offered him.

None of the foregoing objections require a great deal of investigation or analysis. They are factual details that Mr. Jerry would like brought in front of the court for its assessment. Mr. Jerry asks that the Court consider these objections prior to imposing a final ruling on the PSR.

WHEREFORE, Defendant respectfully requests a sentence of (a) 84 months and one day of incarceration; (b) 5 years of supervised release; (c) no fine; (d) no restitution; and (e) the mandatory special assessment is sufficient but not greater than necessary to meet the sentencing aims of 18 U.S.C. § 3553(a).

                                  Respectfully submitted,

February 4, 2020           ALFRED JERRY, Defendant,

                                  THOMAS PATTON, Federal Public Defender

                                  By: s/ Johanes Maliza
                                  Johanes C. Maliza (6323056)
                                  Assistant Federal Public Defender
                                  600 E. Adams St., Third Floor
                                  Springfield, IL 62701
                                  Telephone:   217-492-5070
                                  Facsimile:    217-492-5077
                                  E-mail:       johanes_maliza@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

<u>s/ Johanes C. Maliza</u>